[L.A. No. 29849. In Bank. Aug. 16, 1971.]

CARLOS V. CEDILLO, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
AEROJET-GENERAL CORPORATION et al., Respondents.

## COUNSEL

Donine, Donine & Cuthbert and Marvin D. Donine for Petitioner.

Rupert A. Pedrin, Sheldon M. Ziff, Gabriel L. Sipos, Thompson, Talbott & Lemaster, George D. Thompson and Graham W. Talbott for Respondents.

## OPINION

**PETERS, J.**—Petitioner sustained a back injury in the course and scope of his employment on November 12, 1964. He was then 36 years of age. On January 21, 1966, the referee, pursuant to stipulations of the parties issued an award granting petitioner permanent disability of 8¾ percent after apportionment. Medical-legal costs were also awarded. There was no provision for medical treatment.

Petitioner then petitioned to reopen the case, and on February 3, 1967, the referee issued supplemental findings and award finding that petitioner needed further medical treatment and that his condition was not permanent and stationary. Specifically the award provided: "(c) Further medical treatment as set forth in Finding No. 7." Finding No. 7 in its entirety reads: "Further medical treatment to cure or relieve from the effects of this injury is required."

On August 11, 1967, the referee issued an award for certain medical expenses and again awarded further medical treatment to relieve from the effects of injury. He used the same language as in the February award. The insurer petitioned for reconsideration, claiming that medical treatment should be apportioned. The petition for reconsideration was denied.

On November 16, 1967, Dr. Paul Harmon performed a laminectomy and spinal fusion on petitioner. The fusion was a posterior fusion between the spinous processes of L4 and L5, and L5 and S1. The operation was paid for by the insurer, and petitioner received temporary disability benefits for the time he was required to be off work.[1]

On June 9, 1969, the case came on for hearing before another referee. The issues raised were liability for self-procured treatment, medical-legal expense, permanent disability and apportionment, the attorneys' fees, and lien claims. No issue was raised by either party as to further medical treatment.

On August 18, 1969, the referee requested a permanent disability rating based upon a back injury resulting in permanent disability restricting applicant to no heavy lifting and no repetitive bending and twisting, to be apportioned two-thirds to the injury. The recommended rating after apportionment and deduction of the prior award was 3 percent. At petitioner's request, a supplemental hearing to cross-examine the rating specialist was held on November 5, 1969. After the hearing, the matter was submitted.[2]

The referee, on February 11, 1970, issued an award of medical-legal expenses, self-procured medical expense, and 3 percent additional permanent disability. The award was silent as to future medical care.

Petitioner then sought reconsideration urging an award of lifetime medical care, and attacking the apportionment and the awards of medical-legal expense and self-procured medical expense. The insurer also sought reconsideration of the medical-legal expense.

In its decision now under review, the board granted additional self-procured medical expense and medical-legal expense, but denied the petitions in all other respects. As to the claim for future medical care the board stated: "As to applicant's contention that further lifetime medical treatment should have been awarded in this matter, the issue of medical treatment was not among the issues raised at the hearing of June 9, 1969; the matter was not in issue, and the Referee could not rule thereon."

■ In the petition for writ of review of the board's order, petitioner, assuming that the board's award has terminated his rights to medical care,

---

[1]On January 15, 1969, petitioner filed a claim alleging a continuing trauma as a result of employment from November 1964 through May 1967. He was denied recovery. This claim is not involved in the instant case.

[2]On November 12, 1969, apparently in an effort to beat the five-year statute of limitations, petitioner filed another petition to reopen, stating that his condition has aggravated due to fracture of bone graft on low back fusion.

urges that there is no evidence to support the termination and that the board could and should have awarded medical care. The board in its answer does not discuss whether or not the prior awards of medical care have been terminated but merely states that the issue of future medical care was not properly raised and the board could not decide it. The insurer in its answer to the petition for writ of review characterizes the findings as determining that petitioner is not entitled to further medical treatment.

At the oral argument before this court, the counsel for the board took the position that the instant award did not terminate the 1967 awards of further medical treatment.

Section 4600 of the Labor Code provides: "Medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. . . ." ■ There is no provision for apportionment of medical expense reasonably necessary to relieve from the industrial injury, and medical expense is not apportionable. (*Granado* v. *Workmen's Comp. App. Bd.*, 69 Cal.2d 399, 405-406 [71 Cal.Rptr. 678, 445 P.2d 294].)

The basis for the recovery of medical expense is that it be reasonably necessary to relieve from the effects of the industrial injury, and there is no provision requiring a finding of disability, temporary or permanent, as a condition to the recovery of such medical expense. It is thus apparent that the right of an injured employee to recover medical expense reasonably necessary to relieve from the effects of injury is independent of the right to recover for disability and the issue of apportionment, and there is no reason why the issues of medical expense and disability may not be separately dealt with by the board.

Under section 5803 of the Labor Code the "appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any such order, decision, or award, good cause appearing therefor. . . ."

■ It is clear that the appeals board retains jurisdiction to rescind its prior awards upon a showing of good cause after notice and an opportunity to be heard. But this does not mean that any subsequent award must be viewed as impliedly rescinding all prior awards.

Absent an express revocation of a prior award or an inconsistency be-

tween the awards, the subsequent award should not be viewed as rescinding the prior awards. Otherwise, there would be a trap for the unwary in those cases where, as here, the board has dealt separately with the various claims which may arise out of a single injury and where the parties believing one issue to be determined by the earlier award no longer contest the issue in the proceedings leading to the subsequent award.

 It may be noted in this connection that the board, as to the issue of permanent disability, believed that its prior award was not rescinded but remained in effect. The finding as to permanent disability upon reconsideration is "an *additional* permanent disability of 3%, after apportionment, equivalent to $630.00," and the award is for that sum of money. (Italics added.)

As the board points out, further medical care was not one of the matters listed as an issue at the hearing of June 9, 1969, and it thus seems clear that there was no issue raised as to whether further medical care might be necessary to comply with the 1967 awards directing further medical care to relieve from injury or whether the award should be continued in effect. The 1970 award does not expressly rescind the 1967 awards, and as to medical care, there is no inconsistency between the prior and subsequent awards. Accordingly, we are satisfied that the 1967 awards of further medical care continue in effect. This, of course, does not mean that petitioner is entitled to any particular procedure or treatment, but he is entitled to any medical care reasonably required to relieve from the industrial injury. Should the parties be in disagreement as to the necessity of any particular treatment, this is a matter that can be determined by the board in a proceeding to enforce its 1967 awards.

Moreover, an express determination by the board, had it made one, that petitioner is not entitled to further medical treatment would not be supported by the evidence. Several of the doctor's reports filed by petitioner state that there is a danger that the fusion is coming apart necessitating further treatment. Although the insurer asserts that there is a conflict in the evidence, the insurer has failed to point to any report of any doctor or any testimony to the effect that medical treatment of the injury will not be necessary in the future.

 Petitioner also attacks the award of disability. The referee and the board relied upon reports of Dr. Harmon. In the petition for reconsideration, petitioner claimed that the reports of Dr. Harmon would not support the finding of disability made by the referee because they did not adequately describe the disability. Petitioner did not in seeking reconsideration

claim that there had been a change in condition since the last of Dr. Harmon's reports. In the petition for writ of review, petitioner no longer claims that Dr. Harmon's reports inadequately describe the disability but urges instead that Dr. Harmon's reports should be disregarded since there has been a change in condition since the last of those reports.[3] However, having failed to raise the issue upon reconsideration, petitioner may not raise the matter for the first time on writ of review. (Lab. Code, § 5904; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.*, 4 Cal.3d 469, 476-477 [93 Cal.Rptr. 575, 482 P.2d 199].)

■ Petitioner also attacks the apportionment. There is substantial evidence that prior to the accident petitioner had a nonindustrial condition of spondylolysis and spondylolisthesis and had had back complaints. In his report of October 1, 1968, Dr. Harmon said that in a man 39 years of age who already has symptoms the symptoms will get worse as he progresses in age and continues to use his back. He said that "it is ordinarily considered that symptoms would progress naturally without previous injury." He concluded that one-third of petitioner's "permanent disability factors" were attributable "to preexisting low back pain, presumably coming from the already existing spondylolysis." In the light of the apportionment in the original stipulated award, this opinion, accepted by the board, warrants

---

[3]The last of Dr. Harmon's reports was dated July 31, 1969.

Petitioner relies upon three reports of Dr. Donald Stewart all dated in October 1969 and reports of Dr. William Freshwater dated November 11, 1969, and Dr. William McColl dated December 9, 1969. In his reports of October 10, 1969, and October 18, 1969, Dr. Stewart took the view that an anterior fusion should be performed at L4-5 and L5, S1, and that if the patient did not improve then a posterior decompression procedure would be done. However, in the last of his reports, dated October 30, 1969, Dr. Stewart stated that he watched petitioner walk to the parking lot after the examination, that there was a difference in his performance than when in the office, that "I am honestly confused as to the exact condition of the patient," and that "I have some suspicion that this patient might be exaggerating and magnifying his symptoms for the purposes of self gain. . . ." He suggested that petitioner should see another doctor.

The examinations of Dr. Freshwater and Dr. McColl occurred subsequent to the submission of the case to the referee on November 5, 1969. Dr. Freshwater reported on November 11 that further surgery was contraindicated. He stated that petitioner has been placed in an anti-gravity cast, that this should stabilize the movement of the fifth lumbar on the sacrum, that he doubted that union will take place in the fused area, that he would treat with ultra-sound and physical therapy, that the patient would be unable to perform work requiring lifting or being on his feet for a long period of time, and that some kind of lumbo-sacral support would be needed for years.

Dr. McColl reported that it appeared from physical examination and X-rays that a pseudarthrosis has developed in the region of the spinal fusion, that physiotherapy might permit him to work in a light work capacity, but that it was also likely that further surgery would be required.

apportionment of the new award under *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 800 [69 Cal.Rptr. 88, 441 P.2d 928].

The decision of the board is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.